Filed 2/18/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| Conservatorship of the Person of A.E. | 2d Civil No. B297092 (Super. Ct. No. 56-2018-00518054-PR-CP-OXN) (Ventura County) |
| KRISTINE A., <br><br> Petitioner and Appellant, <br><br> v. <br><br> VENTURA COUNTY PUBLIC GUARDIAN, as Conservator, etc., <br><br> Objector and Respondent. | |

A prospective conservatee who suffers from Autism Spectrum Disorder, regardless of the degree of mental impairment, has due process rights. The Legislature has provided protection for a "special needs" person. Presence in court so that the trial judge may see and hear the person is a necessary component of the process. Such a person may fear coming to court and will, generally speaking, fear change. Fear

of a change in the living arrangement is especially true where the person has lived with the same parent for 26 years.

Kristine A., mother, appeals the trial court's order denying her petition to be appointed conservator of her 26-year-old "autistic" daughter, A.E. She also appeals the trial court's sua sponte order appointing the Ventura County Public Guardian as the permanent limited conservator of A.E.'s person. A.E. did not appear at the hearing on the petition or tell anyone she was waiving her right to be present. We reverse. The trial court failed to make the requisite finding that A.E. did not want to attend the hearing, or could not be produced for the hearing due to medical inability, or that her appearance was likely to cause serious and immediate physiological damage. (Prob. Code, § 1825, subds. (a)(2)-(3) & (b), (c).)[1] We need not, and do not, reach other constitutional and statutory issues.

*Facts and Procedural History*

A.E. is 26 years old. She suffers from Autism Spectrum Disorder, and has lived with appellant most of her life. A.E. does not like to be touched, is resistant to hygiene and self-care, and has been placed on several psychiatric holds (Welf. & Inst. Code, § 5150) for Psychotic Disorder NOS, anxiety, post-traumatic stress disorder, depression, and intermittent explosive disorder.

On September 25, 2018, appellant filed a petition to be appointed conservator of the person so that she could authorize medical treatment. A.E. had a painful tooth abscess but no dentist would treat her without a court order even though A.E. was a Ventura County Tri-County Regional Center (Tri-

---

[1] All statutory references are to the Probate Code unless otherwise stated.

Counties) client. Lanette Hatch, a licensed physician assistant, submitted a declaration that A.E. lacked the capacity to give informed consent to any form of medical treatment.

Five weeks after the petition was filed, the court investigator reported that she was unable to communicate with A.E. The report summarized a lengthy history of referrals to child protective services and Adult Protective Services for abuse and neglect. But many of the referrals were unfounded or inconclusive. Tri-Counties advised that A.E. lacked the ability to make medical decisions and that appellant was "doing her best for" A.E. but had declined services in the past. The court investigator recommended that appellant's petition be denied and that the public guardian be appointed as A.E.'s conservator. The public guardian did not file a petition to be appointed as conservator.

The trial court appointed the public defender to represent A.E. (§ 1471, subd. (c)) and continued the matter so Tri-Counties could complete A.E.'s evaluation. It also denied appellant's temporary request for conservatorship and appointed the Ventura County Public Guardian as temporary conservator.

Two months later, Doctor Tammy K. Brandt prepared a written evaluation recommending a limited conservatorship for A.E.'s medical treatment. Dr. Brandt did not rule out appellant as a conservator but was concerned about the prior referrals for neglect and alcohol abuse.[2]

A month later, the trial court discussed the matter with counsel and appellant. The public defender, who

---

[2] Appellant was convicted of 1998 Colorado misdemeanors, driving without a license, driving under the influence, and reckless endangerment.

3

represented A.E., stated that A.E. was living with appellant and "I can't point to anything that says [appellant] is not doing a good job at this point." Appellant was concerned about A.E.'s tooth abscess and told the court: "I found a dentist that takes care of adult autism, . . . and [A.E.] needs this. She's in so much pain that she's acting out . . . [a]nd I don't have the [temporary] conservator[ship] to say, okay, you got . . . to go honey. And she knows this, but she's – she's scared. . . . I called the [public] guardian and they - - they said there's nothing we can do. Call 9-1-1."

The trial court asked about A.E.'s permanent placement and was told it is "still up in the air." The public defender stated that Tri-Counties requested placement at several facilities and "all of them have declined to accept [A.E.] because of . . . the autism and the behavioral issues." The public guardian's attorney stated that "we've had similar cases, . . . where it can take up to a year to place someone with – with [A.E.'s] type of disabilities."

The trial court was concerned. "[W]e're here now, pretty far down the line, without medical treatment, without dental treatment, without access to services. . . . I have complete sympathy for [appellant and]. . . everybody involved, mostly A.E. . . . And I think that I've got to do what's best – appoint the person or entity who is going to make things happen in a much more quick manner than they have happened." The public guardian's attorney said the public guardian, acting as A.E.'s conservator could work with Tri-Counties and appellant but conceded "the only choice would be to leave [A.E.] at home [with appellant] with the in-home services."

4

Appellant's trial counsel asked "Why not Tri-Counties working directly with [appellant]? If [A.E.] is going to be at home with her mother, her mother needs to be the conservator with these limited powers and work directly with Tri-Counties. If the Court wants to bring us back at the end of six months to see how things are going, great. I think that's appropriate. But I think [appellant] is the more appropriate person to be the conservator during this six-month period or a year period while we're waiting to get her placed. She absolutely wants [A.E.] to get the help she needs."

The trial court appointed the public guardian as the limited conservator of A.E.'s person and clarified its order. "[T]his is not an extension of a temporary appointment. This is a permanent appointment."

### Discussion

Section 1825, subdivision (a) requires that the proposed conservatee "be produced" at the hearing on the guardianship petition unless certain exceptions are met.[3] (See, e.g., *Conservatorship of John L.* (2010) 48 Cal.4th 131, 146

---

[3] Section 1825, subdivision (a) states: "The proposed conservatee shall be produced at the hearing except in the following cases: [¶] (1) Where the proposed conservatee is out of the state when served and is not the petitioner. [¶] (2) Where the proposed conservatee is unable to attend the hearing by reason of medical inability. [¶] (3) Where the court investigator has reported to the court that the proposed conservatee has expressly communicated that the proposed conservatee (i) is not willing to attend the hearing, (ii) does not wish to contest the establishment of the conservatorship, and (iii) does not object to the proposed conservator or prefer that another person act as conservator, and the court makes an order that the proposed conservatee need not attend the hearing."

[section 1825 procedure for proposed conservatee's production and attendance must be followed at hearing on LPS proceeding].) Section 1825, subdivision (c) provides: "Emotional or psychological instability is not good cause for the absence of the proposed conservatee from the hearing unless, by reason of such instability, *attendance at the hearing is likely to cause serious and immediate physiological damage to the proposed conservatee.*" (Italics added.) There is no evidence of that. "If the proposed conservatee is unable to attend the hearing because of medical inability, such inability shall be established (1) by the affidavit or certificate of a licensed medical practitioner . . . ." (§ 1825, subd. (b).)

Respondent argues: "There is nothing in the record to indicate that A.E. desired to attend the hearing, . . . [and] the Court Investigator's Report, the [Tri-Counties] report, and [appellant's] own petition make it clear that A.E.'s mental and emotional condition made her both unable and unwilling to attend the court hearing." That does not satisfy section 1825.

The record is silent on whether A.E. was asked if she wanted to attend the hearing or agreed to the proposed public guardian conservatorship. Section 1825, subdivision (a)(3) provides that a proposed conservatee may be excused from attending the hearing if he or she "*expressly communicated*" that he or she is unwilling to attend and does not contest the conservatorship or oppose the proposed conservator. This did not happen.

Respondent argues that appellant forfeited the section 1825 issue by not objecting. Respondent cites no authority, and we have found none, that a biological parent can

6

waive the section 1825 rights of an adult proposed conservatee, regardless of the degree of mental impairment.

When a petition is filed to establish a conservatorship, the matter must be conducted according to the law and procedure relating to the trial of civil actions, including trial by jury if requested by the proposed conservatee. (§ 1827.) The proposed conservatee is presumed to be competent and retains all his or her legal and civil rights. (§ 810, subd. (a).) The Legislature has declared that a conservatorship is to "[p]rotect the rights of persons who are placed under conservatorship," to "[p]rovide that the health and psychosocial needs of the proposed conservatee are met," and to "allow the conservatee to remain as independent and in the least restrictive setting as possible." (§ 1800, subds. (a), (c), & (d).) A limited conservator may be appointed for a developmentally disabled adult to be utilized "only as necessary to promote and protect the well-being of the individual" and "shall be designed to encourage the development of maximum self-reliance and independence of the individual, and shall be ordered only to the extent necessitated by the individual's proven mental and adaptive limitations." (§ 1801, subd. (d).) The standard of proof for appointment of a conservator is clear and convincing evidence (§ 1801, subd. (e)) and one of the goals of the conservatorship is to "[p]rovide that the health and psychosocial needs of the proposed conservatee are met." (§ 1800, subd. (c).)

Appellant and A.E. complain there was no testimony under oath, no opportunity for cross-examination, no opportunity to examine the biological parents, caregivers, or investigators, and that the conservatorship order violates the American with Disabilities Act (42 USC § 12101 et seq.). We do not reach those

7

issues because section 1825 required that A.E. consent to the appointment of the proposed conservator or a showing had to be made that A.E. was unable or unwilling to attend the hearing.[4] "Probate Code section 1825(a)(3)'s procedure pertaining to a proposed conservatee's production and attendance at the hearing must be followed . . . ." (*Conservatorship of John L., supra*, 48 Cal.4th at p. 146.) Section 1825 is like the light switch to the courtroom and until it is turned on (i.e., satisfied), the trial court cannot truly see the big picture. It is precluded from ruling on the merits of a petition to appoint a conservator until it complies with section 1825.

*Disposition*

The judgment (order denying appellant's petition for appointment of conservator and orders appointing the Ventura County Public Guardian as temporary and permanent limited conservatorship of the person of A.E.) are reversed. The matter is remanded for further proceedings. We express no opinion on how the trial court should rule, on the merits. Costs are awarded to appellant.

CERTIFIED FOR PUBLICATION.

YEGAN, J.

We concur:

GILBERT, P. J.                    TANGEMAN, J.

---

[4] The physician assistant saw A.E. once and submitted a declaration stating that "[A.E.] has autism. The one visit I had with her she was able to follow very basic instructions with the help of her mother."

8

Roger L. Lund, Judge

Superior Court County of Ventura

_____

MacCarley & Rosen, Mark MacCarley and Lisa MacCarley; Law Offices of Ann C. Schneider and Ann C. Schneider for Petitioner and Appellant.

Gerald J. Miller, under appointment by the Court of Appeal for Conservatee.

Leroy Smith, County Counsel, Mitchell B. Davis, Assistant County Counsel for Respondent.